UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEBRA A. JONES,

          Plaintiff,

    v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

          Defendant.

CASE NO. C17-965-BAT

**ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE CASE**

Debra A. Jones appeals the ALJ's decision finding her not disabled contending the ALJ misevaluated the medical evidence, her testimony, and the lay testimony, and that the residual functional capacity ("RFC") determination therefore fails to account for all of her limitations. Dkt. 12. She also contends the Court should remand the case based upon new evidence that she submitted to the Appeals Council. *Id*. at 18-19. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

**BACKGROUND**

Ms. Jones is currently 62 years old, has a high school diploma and training as a certified nursing assistant, and has worked as a cashier, customer service representative, retail sales associate, retail greeter, housekeeper, and seamstress. Tr. 156-57, 162. In February 2011, she protectively applied for benefits, alleging disability as of December 15, 2010. Tr. 140-43, 151.

Her application was denied initially and on reconsideration. Tr. 88-90, 95-99. The ALJ conducted a hearing on August 2, 2012, Tr. 23-57, and subsequently issued a decision finding Ms. Jones not disabled. Tr. 11-19.

The Appeals Council denied review of this decision,( Tr. 1-6), and Ms. Jones requested judicial review in the U.S. District Court for the Western District of Washington. Tr. 482-87. The Court granted the parties' stipulation to reverse the ALJ's 2012 decision and remand for further administrative proceedings. Tr. 488-94. A different ALJ conducted hearings on July 27, 2015, and December 7, 2015, Tr. 376-460, and subsequently issued a decision in 2016 finding Ms. Jones not disabled. Tr. 343-56. Ms. Jones sought review in the Appeals Council submitting exceptions and additional evidence. As the Appeals Council denied review, the ALJ's 2016 decision is the Commissioner's final decision. Tr. 322-26.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Ms. Jones did not engage in substantial gainful activity between her alleged onset date through her date last insured ("DLI").

**Step two:** Through the DLI, Ms. Jones' obesity and fibromyalgia were severe impairments.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[2]

**RFC:** Ms. Jones can perform light work, with additional limitations. She can occasionally balance, stoop, kneel, and crouch, and cannot climb or crawl.

**Step four:** Ms. Jones can perform her past work as a return clerk, cashier II, and sewing machine operator, and is therefore not disabled.

Tr. 343-56.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE - 2

# DISCUSSION

## A. Medical Evidence

### 1. Kim Liu, M.D.

Ms. Jones argues the ALJ misevaluated certain portions of the medical evidence. Dr. Liu examined Ms. Jones in May 2011, noting Ms. Jones had problems squatting and moved slowly between sitting and standing. Tr. 199-206. Dr. Liu also recorded Ms. Jones' report of "difficulty with prolonged sitting, walking and standing." Tr. 204. Dr. Liu opined based upon her examination, Ms. Jones' history and available information, that Ms. Jones "may sit and stand with breaks every 20 minutes, walk with breaks every 10 minutes. She is able to lift and carry about 10-12 pounds," can bend but would have problems with squatting. Tr. 205.

The ALJ rejected Dr. Liu's opinion about Ms. Jones' difficulties squatting, standing, and sitting finding the opinion is inconsistent with the longitudinal record, the limitations are not indicated in other examinations or treatment sessions, and the limitations are inconsistent with Dr. Liu's findings and observation that Ms. Jones was not uncomfortable or in pain during the examination. Tr. 353. These are specific, legitimate reasons to discount Dr. Liu's opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (rejecting physician's opinion due to discrepancy or contradiction between opinion and the physician's own notes or observations is "a permissible determination within the ALJ's province"); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).

Ms. Jones emphasizes Dr. Liu diagnosed her with fibromyalgia, which could cause the limitations described in Dr. Liu's opinion. However, Dr. Liu did not document any examination findings that establish fibromyalgia caused limitations as to sitting or standing. Dkt. 12 at 4.

Moreover, Dr. Liu indicated fibromyalgia causes "constant body ache," Tr, 204, but noted "patient did not complain during the exam." *Id.* Based upon the record, the Court cannot say the ALJ's determination was unreasonable or legally erroneous and according affirms the ALJ's findings as to Dr. Liu.

### 2. *Richard A. Neiman, M.D.*

Treating rheumatologist, Richard A. Neiman, M.D., provided a number of opinions regarding Ms. Jones' functionality and ability to perform work tasks. *See* Tr. 302-04, 683-84, 686, 1059-61. The ALJ summarized Ms. Jones' treatment relationship with Dr. Neiman, noting that in January 2011, one month after her first appointment, Dr. Neiman opined Ms. Jones could work 6-7 hours per day, although his contemporaneous treatment notes do not indicate any significant physical findings. Tr. 353 (citing Tr. 194, 686). A month later, Dr. Neiman opined Ms. Jones had been totally disabled from work since December 15, 2010. *See* Tr. 683-84. The ALJ found Dr. Neiman's treatment notes do not explain why, in a month's time, he changed his opinion about Ms. Jones' ability to work. Tr. 353.

The ALJ also noted Dr. Neiman completed two declarations to support Ms. Jones' application for benefits, and that the earlier of the two declarations was submitted to the Commissioner only after Ms. Jones referenced it in her hearing testimony. Tr. 353 (referencing Tr. 302-04, 1059-61). On August 1, 2012, Dr. Neiman signed a declaration and crossed out portions of the declaration (presumably written by Ms. Jones' attorney), that state he believed Ms. Jones' allegations that her pain precluded work. Tr. 1061. On August 3, 2012, Dr. Neiman signed a declaration indicating that *inter alia* he prescribed Ms. Jones pain medication because he believed her complaints of pain, and that her complaints of an inability to stand/walk for six out of eight hours per day were reasonable and credible. Tr. 304. The ALJ inferred from the

differences between the two declarations that Dr. Neiman "was unwilling to sign a declaration stating it was his opinion the claimant was unable to work in any capacity." Tr. 353-54. The ALJ also indicated the credibility of Ms. Jones' complaints is not an issue within Dr. Neiman's province. Tr. 354. The ALJ gave little weight to Dr. Neiman's opinions, finding them inconsistent with the minimal physical examination findings and the lack of observations of Ms. Jones in pain or discomfort during medical exams. Tr. 354.

Ms. Jones contends the ALJ erred in finding the January and February 2011 opinions are inconsistent because the second opinion states she could not perform full-time work, which is consistent with the first opinion that she could work 6-7 hours per day. Dkt. 12 at 5-6. Ms. Jones also argues the ALJ erred in extrapolating from Dr. Neiman's correction of a draft declaration, and that Dr. Neiman properly addressed the credibility of her complaints. Dkt. 12 at 6. Ms. Jones also contends the ALJ erred in finding Dr. Neiman's opinions to be inconsistent with the medical record and appointment observations, because this reason does not "justify [the ALJ's] rejection of Dr. Neiman's opinion." Dkt. 12 at 6.

Ms. Jones has not shown the ALJ's assessment of Dr. Neiman's opinions is not supported by substantial evidence or legally erroneous. The ALJ reasonably found Dr. Neiman's January and February 2011 opinions are inconsistent because the doctor stated in January 2011, Ms. Jones could work 6-7 hours per day, and stated a month later she could not work either full- or part-time since December 2010. *Compare* Tr. 683 *with* Tr. 686. These two opinions plainly are inconsistent.

The ALJ also properly considered the lack of any explanation in Dr. Neiman's contemporaneous clinical findings regarding the change in his January and February 2011 opinions about Ms. Jones' work ability. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE CASE - 5

2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

The ALJ's evaluation of Dr. Neiman's edits to the first August 2012 declaration is also reasonable. Dr. Neiman crossed out portions of his declaration. The ALJ reasonably concluded that the doctor was retracting those portions of the declaration by crossing them out.

As to the ALJ's statement that the credibility of a claimant's allegations is a task for the ALJ, not an individual physician, that is true insofar as the ALJ makes the ultimate call as to a claimant's credibility. *See Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) ("Credibility determinations are the province of the ALJ."). However, a doctor's opinion about whether a claimant is credible, i.e., truthful, or malingering, i.e., untruthful is evidence that an ALJ normally must consider and not simply reject out of hand.

The Court notes the ALJ is also entitled to consider the degree to which Dr. Neiman's opinions are consistent with the remainder of the record, and that the ALJ reasonably found the doctor's August 2012 opinions are inconsistent with Ms. Jones' physical examination findings and presentation during other appointments. To the extent that Ms. Jones contends, contrary to the ALJ's decision, other providers observed her experiencing discomfort, the treatment notes cited by Ms. Jones reference only her reports of pain, not clinical observations. Dkt. 12 at 6-7. In short, the ALJ gave numerous valid reasons to discount Dr. Neiman's opinions. To the extent the ALJ may have also given erroneous reasons, those error are harmless because the errors do not undermine the valid reasons set forth by the ALJ.

### 3. *State Agency Opinions*

The ALJ gave significant weight to the State agency opinions. *See* Tr. 352-53. Ms. Jones suggests the ALJ erred in failing to acknowledge the State agency reviewers were limited to

1 reviewing the evidence in the record at the time, and therefore did not review any evidence more
2 recent than August 2011. Dkt. 12 at 8. Ms. Jones also contends the ALJ erred in crediting the
3 State agency opinions because the consultants did not fully account for her subjective report of
4 symptoms. *Id*.

That the State agency reviewers did not have access to evidence not in existence at the time of their review does not rob their opinions of all probative value, because the ALJ has access to the entire record and can consider whether such opinions are consistent with the remainder of the record. Ms. Jones has not identified any particular symptoms that the State agency consultants failed to account for, and thus has not met her burden to show error in the ALJ's assessment of those opinions in that respect. Perhaps Ms. Jones relies upon Drs. Liu's and Neiman's opinions but as discussed above, the ALJ properly discounted their opinions. For all of these reasons, Ms. Jones has failed to establish error in the ALJ's assessment of the medical evidence.

**B.     Ms. Jones' Testimony**

The ALJ discounted Ms. Jones' testimony because he found (1) her testimony to be inconsistent with the evidence discussed in the prior ALJ decision, and inconsistent with the physical examination findings in the newer evidence; and (2) her receipt of unemployment benefits for a "significant portion of the time she claims she was disabled" undermined her allegation of disability. Tr. 350-52. Ms. Jones contends these reasons are not clear and convincing, as required in the Ninth Circuit. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Ms. Jones argues the errors in the ALJ's assessment of the medical opinion evidence tainted his assessment of her subjective testimony, referring to her arguments discussed in the

prior section. Dkt. 12 at 8. But, as explained above, the Court finds Ms. Jones has not shown the ALJ misevaluated the medical evidence.

Ms. Jones also challenges the ALJ's reference to the prior ALJ decision's assessment of her testimony, regarding her activities, contending because the prior decision was vacated, portions of it cannot be properly adopted in the current ALJ decision. Dkt. 12 at 8-9. Ms. Jones is mistaken; the ALJ is entitled to incorporate by reference portions of a prior decision not found to be erroneous. *See, e.g.*, *Conejo v. Colvin*, 2014 WL 4264945, at *9 (C.D. Cal. Aug. 27, 2014) ("Generally, it is not improper for an ALJ to incorporate a previous decision and supplement it with a subsequent decision."); *Mason v. Astrue*, 2008 WL 4382662, at *2 (C.D. Cal. Sep. 11, 2008) ("Contrary to Plaintiff's assertion, there is nothing *per se* improper about incorporating prior administrative decisions by reference."). The ALJ did not err in referring to the prior ALJ's findings regarding Ms. Jones' subjective testimony, and expanding the findings in light of the entire record.

Ms. Jones also argues the ALJ misevaluated the medical evidence, contending the ALJ relied on an "objective evidence" test, even though an ALJ cannot reject a claimant's testimony "solely" based upon whether objective evidence supports the alleged limitations. Dkt. 12 at 9. But the ALJ did not solely rely on this reasoning: the ALJ also focused on inconsistencies between Ms. Jones' allegations and how she presented during appointments, as well as inconsistencies between her allegation of disability and her receipt of unemployment benefits. Tr. 350-52.

Ms. Jones disputes the ALJ's finding she presented inconsistently during appointments. The ALJ cited treatment notes where Ms. Jones did not report tenderness to palpation, in contrast to other appointments where she did. Tr. 350-51. Ms. Jones argues the treatment notes cited by

the ALJ are irrelevant because they did not necessarily involve palpation of tender points; therefore her lack of tenderness at those appointments cannot be deemed to be inconsistent with appointments which focused on her tender points. Dkt. 12 at 10. As noted by the Commissioner, however, the treatment notes cited by the ALJ reference an examination of many body parts, including the face, ears, eyelids, lips, neck, chest, abdomen, proximal bilateral lower extremities, and lumbar spine. Dkt. 13 at 8 (citing Tr. 886, 887). At least some of those areas include tender points. Accordingly, the ALJ reasonably found these treatment notes to be inconsistent. *See* Tr. 204 (referencing tenderness in lumbar spine), 886 (referencing no tenderness in lumbar spine).

The ALJ also noted some providers did not observe Ms. Jones to be in pain, which is inconsistent with her testimony that she is in constant pain. Tr. 351. The ALJ did not err in relying on this inconsistency, particularly because Ms. Jones testified that she was always in pain. *See* Tr. 395. Although Ms. Jones cites Social Security Ruling 12-2p, which describes fibromyalgia as a condition involving symptoms that wax and wane, Ms. Jones testified her fibromyalgia causes pain "all the time." Dkt. 12 at 10; Tr. 395. The ALJ did not err in considering the extent to which the record contradicted Ms. Jones' testimony that she is in constant pain.

Finally, Ms. Jones challenges the ALJ's findings regarding her receipt of unemployment benefits. She alleges the ALJ relied upon evidence that does not contradict her testimony (Dkt. 12 at 11). The ALJ cited evidence Ms. Jones certified she was able to work full-time (not merely part-time) during the period she received unemployment benefits, despite the restrictions placed on her by her treating physician. Tr. 352. The ALJ did not err in finding Ms. Jones' receipt of unemployment benefits to undermine her allegations, under these circumstances. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (finding that holding that

a certification that a person is available for full-time work pursuant to the receipt of employment benefits undermines that person's allegation of disability).

Ms. Jones' also provides a lengthy summary of her testimony but the length of the recitation does not, itself, establish error in the ALJ's decision. Dkt. 12 at 11-15. In sum, because the ALJ provided at least one valid reason to discount Ms. Jones' testimony, the Court affirms the ALJ's determination.

**C.    Lay Witness Testimony**

Ms. Jones' friend Steve Hoyt testified at the 2012 hearing; the first ALJ decision discounted Mr. Hoyt's testimony, Tr. 17. Ms. Jones argues the ALJ in 2016 erred by "completely failing to evaluate Hoyt's testimony." Dkt. 12 at 16. The argument fails because the ALJ specifically stated "this decision supplements the prior decision of September 28, 2012, which is incorporated herein by this reference, to the extent it is not inconsistent with the AC order of the following decision." Tr. 344. The ALJ thus did not "silently" adopt analysis from the prior decision, as claimed by Ms. Jones but explicitly stated he was incorporated the 2012 decision into the 2016 decision n. Dkt. 14 at 9. The Court accordingly finds Ms. Jones has failed to establish the ALJ harmfully erred. *See e.g. McQueen v. Berryhill*, No. 17-5632, 2018 WL 1071592 at * 4 (W.D. Wash. Feb, 27, 2018) ("Ms. McQueen also contends the ALJ erred when she ignored Dr. Marchant's opinion about weight limits. Dkt. 12 at 10. However, the ALJ incorporated by reference those portions of her prior decision that were not disturbed by the District Court.").

**D.    RFC Assessment**

Because Ms. Jones has failed to show the ALJ harmfully erred in assessing the medical evidence, Ms. Jones' testimony, and the lay testimony, her argument that the RFC determination is erroneous is foreclosed.

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE - 10

**E.      Evidence Presented to the Appeals Council**

After the ALJ issued the 2016 decision, Ms. Jones sought review in the Appeals Council, and presented new evidence consisting of a declaration from Ms. Jones that she measures 31 inches wide when seated, and a statement from a vocational expert ("VE") about a different claimant's case that standard workplace chairs measure 18-21 inches, and a person who is wider than that would require a workplace accommodation. *See* Tr. 322-75. Ms. Jones contends the Court should reverse the Commissioner and remand the case because this evidence shows she cannot perform a "sit-down job without the accommodation of a bariatic chair." Dkt. 12 at 18.

The parties fail to address whether the fact the new evidence was submitted outside the 30-day extension granted by the Appeals Council bars the Court from considering it. *See* Tr. 327-39. However, assuming the Court should review the new evidence to determine whether the ALJ's decision is supported by substantial evidence under *Brewes v. Commissioner of Social Security Administration*, 682 F.3d 1157 (9th Cir. 2012), the Court finds the evidence does not move the needle. The new evidence implicates the ALJ's step-four finding that Ms. Jones can perform some of her past jobs as generally performed, because if she requires a special accommodation not typically provided in the workplace whenever she is seated, then she may not be able to perform those jobs as they are generally performed. *But see Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 803 (1999) ("[W]hen the SSA determines whether an individual is disabled for SSDI purposes, it does not take the possibility of 'reasonable accommodation' into account[.]").

But the new evidence does not undermine the ALJ's step-four finding that Ms. Jones can perform some of her past jobs as actually performed, because there is no evidence Ms. Jones used a bariatric chair in any of those past jobs; therefore whether an accommodation is available

or required is irrelevant to whether she can perform her past work as actually performed. *See* Program Operations Manual System DI 25005.020(E) ("If a previous employer offered accommodations that allowed the claimant to perform [past relevant work] with his or her impairment, and the claimant retains the ability to do the [past relevant work] with the accommodations in place, find the claimant able to do [past relevant work] even if the accommodations might not be available in other workplaces or if work ceased because the employer removed the accommodations."). Because Ms. Jones apparently performed her past work without a bariatric chair, the ALJ's finding she can perform that work as she actually performed it is not undermined by the new evidence suggesting she is too wide to sit in standard workplace chairs. Accordingly, because the new evidence does not undermine the entirety of the ALJ's step-four findings, Ms. Jones has failed to establish the new evidence necessitates a remand, under *Brewes*.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 10th day of April, 2018.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge